UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Joey Junior Padron,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　No. 17 CV 50219
　　　　　　　　　　　　　　　　　　　)　　Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting　　　　　　　)
Commissioner of Social Security,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiff Joey Junior Padron worked as a construction worker for a number of years but eventually stopped because of spinal problems. In 2009, he had spinal fusion surgery. Despite some initial improvement, he continued to experience pain, especially after doing strenuous activity. Later he had neck pain attributable to a bulging disc, and he also had other recurring problems—Hepatitis C, carpal tunnel syndrome, sleep apnea, and vertigo. In December 2013, he filed for disability benefits. He was then 51 years old. Over the relevant treatment period, roughly from 2010 to 2015, his medical care was overseen by Dr. Allen Williams. In late 2015, Dr. Williams completed an assessment stating that plaintiff had limitations that would prevent him from working. This opinion was a key piece of evidence in the case. Another prominent issue was plaintiff's consultation with Dr. Melissa Macias on December 3, 2014. At this visit, Dr. Macias discussed the possibility of another surgery to address plaintiff's ongoing pain, but plaintiff stated that he did not want surgery because (according to the treatment notes) he had "family obligations" and the pain was "tolerable and not disruptive to his life." R. 695. The administrative law judge ("ALJ") relied on both plaintiff's decision not to undergo the surgery,

1

as well as these contemporaneous comments, in finding that he was capable of doing light work and, therefore, not disabled.

The above facts provide a sufficient background to start the analysis. Plaintiff raises three arguments for remand. They are the following, set forth in the order they appear in the opening brief: (1) the ALJ failed to consider whether plaintiff's vertigo qualified as a severe impairment; (2) the ALJ erred in finding plaintiff not credible; and (3) ALJ erred in giving little weight to Dr. Williams' 2015 opinion. However, in the reply brief, plaintiff switched the order, moving the third argument first. The Court agrees that this order better reflects the strength of these arguments. And, although it is a close call, the Court finds that a remand is required. The Court will begin with, and focus mostly on, whether the ALJ failed to give sufficient weight to Dr. Williams' opinion.

On November 11, 2015, Dr. Williams completed a two-page form entitled "Physical Assessment." He opined that plaintiff could only sit or stand or walk for two hours out of an eight-hour day; that he could occasionally lift less than 10 pounds; and that he would miss more than four days a month. R. 810. It is undisputed that, if this opinion had been given substantial weight, then plaintiff would have been found disabled.

The ALJ gave four reasons for rejecting the opinion: (1) "the determination as to whether the claimant is disabled is an opinion reserved for the Commissioner"; (2) Dr. Williams "did not cite any specific, objective medical evidence"; (3) the objective medical evidence did not support the opinion; and (4) plaintiff's statements contradicted the opinion. R. 29.

Plaintiff argues that this analysis was substantively and procedurally deficient. The latter claim is based on the treating physician rule, and specifically the ALJ's failure to explicitly apply

the checklist factors.[1] Plaintiff particularly faults the ALJ for not giving weight to the fact that Dr. Williams treated plaintiff for almost five years, and that he made referrals to other doctors such as Dr. Macias. In the disability parlance, he had a longitudinal view. These facts relate to the first two checklist factors—length and nature of treatment. In its response brief, the Government ignores this argument and instead re-summarizes the ALJ's four rationales and then announces that this is sufficient because, under the Government's view, ALJs only need to provide a "minimal articulation" for their decision. Dkt. #14 at 5. However, this Court takes the view that an explicit analysis is required. *See Duran v. Colvin*, 2015 U.S. Dist. LEXIS 101352, *8-9 (N.D. Ill. Aug. 4, 2015). Still, in a few cases, this Court has been willing to invoke the harmless error doctrine when an ALJ implicitly addressed the checklist the factors and otherwise provided a substantial analysis.

This provides a natural segue to the substantive arguments. The Court will consider the four rationales individually. The first rationale—that the determination of disability is "reserved to the Commissioner"—is boilerplate fluff. It is true that the ALJ makes the final decision, but this does not mean that an ALJ can throw out any medical opinion if it might have a strong, even dispositive, effect. The treating physician rule directly contemplates this very possibility when it directs the ALJ to first consider whether the opinion deserves "controlling" weight.[2] Moreover, the Seventh Circuit recently criticized this rationale. *See Knapp v. Berryhill*, 741 Fed. Appx. 324, 327 (7th Cir. 2018) ("[T]he ALJ was of the mistaken view that Dr. Kidder's opinion of Knapp's ability to work was reserved to the Commissioner. The legal question whether a claimant

---

[1] The factors are (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c).

[2] The ALJ's rationale might be relevant in the atypical situation where a doctor only provides a bottom-line conclusion that the claimant is disabled but does not offer any specific opinions about the claimant's functional limitations. Here, Dr. Williams did not opine directly about the ultimate question of whether plaintiff was disabled.

qualifies for benefits is reserved, but when deciding the claimant's RFC, ALJs must consider the treating physician's view that the severity of a claimant's impairments makes her unable to work.") (vacating and remanding).

The ALJ's second and third rationales are stronger, but still contain unresolved issues. Both relate to the "objective evidence." The second rationale was that Dr. Williams did not cite to specific objective evidence. This is true as it relates to the two-page form. In fact, he did not cite to *any* evidence, specific or otherwise. The amount and type of evidence supporting an opinion is certainly a valid area of inquiry (*see* checklist factor #3). But the concern here is that the form given to Dr. Williams did not ask him to list his supporting evidence. He answered every question on the form. This rationale by itself is thus incomplete.

The third rationale better gets at the relevant issue—whether the doctor's opinion was supported by objective evidence. The ALJ claimed that it was not. The ALJ referred to "the MRIs of the claimant's cervical spine and the various references to the claimant's normal gait and upper and lower extremity strength" and then followed this statement with a list of seven record citations.[3] In his opening brief, plaintiff took a familiar tack. He culled through the record and marshalled counter-evidence, stating as follows:

> Plaintiff has treated with numerous other doctors for his back and neck pain. T 474-75, 482-83, 491, 505-06, 573-76, 611-13, 689-90, 693-95. The medical imaging demonstrates disc bulges and osteophyte complex in Plaintiff's cervical spine with associated stenosis. T 669-70. He has tried pain medications and steroid injections, which have only provided measures of temporary relief. T 432-35, 497, 586, 611-13, 689-90, 693-95.

---

[3] Also in the later credibility analysis, the ALJ noted that plaintiff had "5/5 strength in his upper and lower extremities (with one reference to slightly reduced 5-/5 strength in his left upper extremity." R. 30-31.

Dkt. #9 at 13. The Government, in its response, did not respond to this evidence but instead merely re-stated the ALJ's assertion that the MRIs and the normal gait findings contradicted the doctor's opinion.

This back and forth has left the Court stranded in a familiar cul-de-sac. Each side has cited to its own array of handpicked technical medical findings. But the problem is that the ALJ called no medical expert at the hearing, and the State Agency physicians did not provide any meaningful analysis. As a result, the ALJ's analysis, as well as plaintiff's contrary analysis, both rely on a layperson analysis rather than on an expert medical opinion. As the Seventh Circuit has held, a remand is appropriate in this situation. *See Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) ("The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion."); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJs should not "play doctor" by summarizing the results of a medical exam without input from an expert).

The Court finally considers the ALJ's fourth rationale. The ALJ cited to the following two examples of allegedly inconsistent statements:

- [W]hile Dr. Williams opined that the claimant could only occasionally lift and/or carry less than 10 pounds, the claimant reported that he could lift 10 to 15 pounds (Ex. 3E/6; Ex. 11E/6).
- [A]s of December 2014, the claimant reported that his pain was tolerable and that he did not want to undergo more invasive treatment, including surgery, because it would disrupt his life (Ex. 24F/7).

R. 29. The first statement is questionable because it relies on a slight distinction, one that largely evaporates on a closer examination. To recap, Dr. Williams was asked in Question #5(d) to estimate how many pounds plaintiff could "lift and carry in a competitive work situation." R. 810. He put an "X" in the column indicating that plaintiff could "occasionally" (defined as "less

5

than 1/3 of the 8-hour day") lift and carry "less than 10 pounds." *Id.* The ALJ then compared these answers to two Adult Function Reports. The first one (Ex. 3E), dated February 4, 2014, was completed by plaintiff's wife. She wrote that plaintiff was "abel [sic] to lift 10 to 15 pounds." R. 278. The second one (Ex. 11E), dated September 23, 2014, was also completed by plaintiff's wife. Here, she handwrote that plaintiff was "unabel [sic] to lift >10 lbs." R. 308. A fair reading of these statements suggests that was not a material contradiction.

For one thing, the ALJ did not acknowledge that the second statement by plaintiff's wife was consistent with Dr. Williams' 10-pound restriction.[4] The ALJ only quoted the higher number from the first statement. Even if only the first statement were considered, there is arguably not a major difference between 10 to 15 pounds (plaintiff's wife) and less than 10 pounds (Dr. Williams).[5] Another factor to acknowledge is that both Dr. Williams and plaintiff's wife were making *estimates* of what they believed plaintiff could lift. They were not doing a functional capacity evaluation where precise measurements are made. The ALJ's analysis rests on an expectation of exactitude that seems unrealistic. Finally, as plaintiff notes, Dr. Williams' estimate was made in reference to plaintiff's abilities to do *repetitive* lifting in a "competitive work situation." R. 810. Plaintiff's wife appears to have been referring to a single one-off lifting scenario, such as bringing a bag of groceries in from the car. For these reasons, the Court finds that this first example does not support the ALJ's inconsistency rationale.

The second alleged inconsistency is about the surgery decision and related comments. Here too, the ALJ's analysis was incomplete. The ALJ relied plaintiff's statement that his pain was "tolerable." But the word "tolerable" is vague standing alone. For example, it could be used

---

[4] This second statement was also closer in time to Dr. Williams' opinion.
[5] When doing construction work, plaintiff frequently lifted over 50 pounds and occasionally lifted over 100 pounds. R. 48.

in a stoical manner to express acceptance of a long-existing condition. Context matters, and a review of the entire treatment notes written by Dr. Macias leaves doubt as to whether plaintiff was using this term in the benign way suggested by the ALJ. Dr. Macias wrote that plaintiff presented "with complaints of severe neck pain"; that it was "described as sharp, stabbing, shooting pain"; that it was exacerbated "with even slight movement of his neck and head"; and that he had "significant limitation of activities and mobility." R. 694. In the decision, the ALJ did not acknowledge these statements made by plaintiff during the same visit. They shed light on what he meant by "tolerable," and they should have been acknowledged and weighed in the analysis.

As for the decision not to undergo surgery, plaintiff argues that the ALJ overlooked several legitimate explanations. The main one was plaintiff's assertion at the hearing that he was "scared to death of surgery" on his neck. R. 61. Another was that the surgery supposedly had "been put on hold due to Hepatitis C treatment." Dkt. #9 at 11. This reason was only raised in the opening brief, and was not mentioned at the hearing. Plaintiff also notes that the ALJ did not ask him at the hearing about his "ability to pay for a surgery." *Id.* Plaintiff suggests that he would have had difficulty paying for the surgery because he had "been unable to afford treatments in the past because he is only on Medicaid." *Id.* This explanation was also not raised at the hearing.

Plaintiff has raised a valid complaint that the ALJ should have acknowledged plaintiff's testimony that he was afraid of surgery and should have explored whether he had financial problems. At the same time, the fact still remains that plaintiff apparently did not mention these additional reasons (fear of surgery and financial difficulties) to Dr. Macias. On remand, this issue can be explored further, but it is a question that plaintiff will have to confront. Plaintiff's explanations would be stronger they had been consistently raised throughout the proceedings.

7

In sum, the Court finds that the ALJ's four rationales for rejecting Dr. William's opinion rest on an incomplete review of the relevant facts and arguments. Having concluded that a remand is required, the Court will briefly comment on the remaining arguments. The second argument has been largely addressed given that the ALJ relied on the lack of objective evidence and the decision not to undergo surgery as two of the four rationales.

As for the third argument, the Court finds that it likely would not support a remand by itself. Plaintiff is correct that the ALJ failed to explicitly consider whether his vertigo (dizziness) constituted a severe impairment. Plaintiff argues that his dizziness met the lenient Step Two standard because he once went to the emergency room "for vertigo" and took several dizziness medications for a while. Dkt. #9 at 8. The Government responds that plaintiff has not identified any specific walking or standing limitations that were needed since the ALJ already included a sit/stand option in the RFC. Plaintiff did not respond to this argument in his reply brief. The Court need not resolve this issue here, but the Court notes that the ALJ at the hearing raised a legitimate question as to why plaintiff did not seek further treatment for his dizziness after doctors told him that he no longer needed to take his dizziness medications. Plaintiff did not provide a clear answer. R. 66. On remand, both the ALJ and plaintiff's counsel should address this issue explicitly.

In remanding this case, the Court is not dictating a particular result, as this Court recognizes that the evidence is not uniform and that plaintiff must overcome several hurdles if he is to be found disabled. On the other hand, plaintiff's burden is somewhat easier in that, given his age and the grid rules, he must be found disabled if he can only do sedentary work. Finally, the ALJ should call an impartial medical expert to ensure that these issues are adequately addressed.

## CONCLUSION

For all the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: December 21, 2018          By: _____
                                    Iain D. Johnston
                                    United States Magistrate Judge